1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    MARTIN WARE,                                No.  2:12-cv-1505 TLN KJN P

12                  Plaintiff,

13          v.                                     ORDER AND FINDINGS AND
                                                   RECOMMENDATIONS
14    M. McDONALD, et al.,

15                  Defendants.

16

17    I.  Introduction

18          Plaintiff is a state prisoner proceeding without counsel.  This action is proceeding on

19    plaintiff's third amended complaint against defendants Hanks, Green, Tancreto, Fackrell, Holt,

20    Giessner and Glover.  Defendants' motion for summary judgment is before the court.  Plaintiff

21    filed an opposition; defendants filed a reply.  As set forth more fully below, the undersigned finds

22    that defendants' motion for summary judgment should be denied.

23    II.  Defendants' Motion for Summary Judgment

24          Defendants move for summary judgment on the grounds that plaintiff failed to exhaust his

25    administrative remedies prior to filing the instant action.

26          A.  Exhaustion of Administrative Remedies

27          The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be

28    brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a

1

prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Woodford v. Ngo, 548 U.S. 81, 90 (2006). The Supreme Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement. See Booth, 532 U.S. at 741 n.6. Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal. See Woodford, 548 U.S. at 90-93. "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [] - rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88). See also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'") (quoting Jones, 549 U.S. at 218).

In California, prisoners may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). Most appeals progress through three levels of review. See id. § 3084.7. The third level of review constitutes the decision of the Secretary of the California Department of Corrections and Rehabilitation and exhausts a prisoner's administrative remedies. See id. § 3084.7(d)(3). A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).

////

2

Failure to exhaust is "an affirmative defense the defendant must plead and prove." <u>Bock</u>, 549 U.S. at 204, 216. In <u>Albino</u>, the Ninth Circuit agreed with the underlying panel's decision[1] "that the burdens outlined in <u>Hilao [v. Estate of Marcos</u>, 103 F.3d 767, 778 n.5 (9th Cir. 1996),] should provide the template for the burdens here." <u>Albino v. Baca</u>, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc). A defendant need only show "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." <u>Albino</u>, 747 F.3d at 1172. Once the defense meets its burden, the burden shifts to the plaintiff to show that the administrative remedies were unavailable. <u>See Albino</u>, 697 F.3d at 1030-31.

A prisoner may be excused from complying with the PLRA's exhaustion requirement if he establishes that the existing administrative remedies were effectively unavailable to him. <u>See Albino</u>, 747 F.3d at 1172-73. The PLRA requires that an inmate exhaust only those administrative remedies "as are available." 42 U.S.C. § 1997e(a). For a remedy to be available, there must be the "possibility of some relief . . . ." <u>Booth</u>, 532 U.S. at 738. A remedy is available to inmates when it is "capable of use; at hand." <u>Albino</u>, 747 F.3d at 1171, quoting <u>Brown v. Valoff</u>, 422 F.3d 926, 937 (9th Cir. 2006). For example, where prison officials improperly screen out inmate grievances, they render administrative remedies effectively unavailable. <u>Sapp v. Kimbrell</u>, 623 F.3d 813, 823, 824 (9th Cir. 2010) (To demonstrate such an exception, "the inmate must establish (1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations."). <u>See also Nunez v. Duncan</u>, 591 F.3d 1217, 1226 (9th Cir. 2010) (excusing an inmate's failure to exhaust because he was precluded from exhausting administrative remedies by a warden's mistaken instruction to him that a particular unavailable document was needed for him to pursue his inmate appeal); <u>Marella</u>, 568 F.3d at 1024 (excusing an inmate's failure to exhaust because he did not have access to the

---

[1] <u>See Albino v. Baca</u>, 697 F.3d 1023, 1031 (9th Cir. 2012). The three judge panel noted that "[a] defendant's burden of establishing an inmate's failure to exhaust is very low." <u>Id.</u> at 1031. Relevant evidence includes statutes, regulations, and other official directives that explain the scope of the administrative review process. <u>Id.</u> at 1032.

1    necessary grievance forms to timely file his grievance).  Plaintiff bears the burden of

2    demonstrating that the administrative remedies were rendered unavailable to him through no fault

3    of his own.  Sapp, 623 F.3d at 822-23; Nunez, 592 F.3d at 1224; Brown, 422 F.3d at 939-40.

4           Where a prison system's grievance procedures do not specify the requisite level of detail

5    for inmate appeals, Sapp, 623 F.3d at 824, a grievance satisfies the administrative exhaustion

6    requirement if it "alerts the prison to the nature of the wrong for which redress is sought."  Griffin

7    v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).  In California, "regulations require only that an

8    inmate 'describe the problem and the action requested.'"  Sapp, 623 F.3d at 824, quoting Cal.

9    Code Regs. tit. 15, § 3084.2(a).)  "A grievance need not include legal terminology or legal

10   theories unless they are in some way needed to provide notice of the harm being grieved.  A

11   grievance also need not contain every fact necessary to prove each element of an eventual legal

12   claim.  The primary purpose of a grievance is to alert the prison to a problem and facilitate its

13   resolution, not to lay groundwork for litigation."  Griffin, 557 F.3d at 1120.

14          If under the Rule 56 summary judgment standard, the court concludes that plaintiff has

15   failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice.

16   Wyatt v. Terhune, 315 F.3d 1108, 1120, overruled on other grounds by Albino, 747 F.3d 1162.

17          B.  Legal Standard for Summary Judgment

18          Summary judgment is appropriate when it is demonstrated that the standard set forth in

19   Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the

20   movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

21   judgment as a matter of law." Fed. R. Civ. P. 56(a).[2]

22              Under summary judgment practice, the moving party always
               bears the initial responsibility of informing the district court of the
23             basis for its motion, and identifying those portions of "the
               pleadings, depositions, answers to interrogatories, and admissions
24             on file, together with the affidavits, if any," which it believes
               demonstrate the absence of a genuine issue of material fact.
25

26   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

27   _____

     [2]  Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010.
28   However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he
     standard for granting summary judgment remains unchanged."

56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

1   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

2   trial." T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

3   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

4   Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

5   amendments).

6        In resolving a summary judgment motion, the court examines the pleadings, depositions,

7   answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

8   Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

9   255.  All reasonable inferences that may be drawn from the facts placed before the court must be

10  drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences

11  are not drawn out of the air, and it is the opposing party's obligation to produce a factual

12  predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F.

13  Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

14  demonstrate a genuine issue, the opposing party "must do more than simply show that there is

15  some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could

16  not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

17  trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

18        By contemporaneous notice provided on May 30, 2014, (ECF No. 63-1), plaintiff was

19  advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal

20  Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc);

21  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

22        C.  Third Amended Complaint[3]

23        Plaintiff alleges that while he was housed at High Desert State Prison ("HDSP") in

24  Susanville, California, defendant Hanks[4] enforced an administrative review into the housing

---

[3]  By order filed November 21, 2013, plaintiff's First and Fourteenth Amendment claims were
dismissed.  (ECF No. 49, adopting Findings and Recommendations No. 43.)

[4]  Although plaintiff named W. Hank as a defendant, defendants have identified this individual as
W. Hanks.  The undersigned refers to defendant Hanks herein.

6

needs of plaintiff and inmate Jose Beltran.  (ECF No. 41 at ¶ 1.)  After interviewing plaintiff, defendant Hanks determined Beltran posed a threat to plaintiff, and Hanks ordered that plaintiff be separated from Beltran and Beltran be transferred to a different housing unit "due to Beltran having attempted to cause violence, first against plaintiff while living in B-1 cell 116."  (ECF No. 41 at ¶¶ 2-3.)  Plaintiff claims defendant Hanks failed to protect plaintiff by failing to properly classify plaintiff.  (ECF No. 41 at ¶ 4.)

On or about June 4, 2011, plaintiff alleges that, during an escort, defendant Green was placed on notice that plaintiff was vulnerable to living with the inmate in cell 203, and that plaintiff would refuse a direct order to accept his new cellmate.  (ECF No. 41 at ¶¶ 5-6.)  Defendant Green determined plaintiff had enemy concerns, but Green "advised he did not know the inmate in cell 203."  (ECF No. 41 at ¶ 7.)  Plaintiff alleges defendant Green denied plaintiff's request to identify an enemy.  (ECF No. 41 at ¶ 8.)

On or about June 4, 2011, after plaintiff arrived at housing unit building two, defendant Tancreto was notified by plaintiff that he planned to refuse a direct order for accepting his new cellmate.  (ECF No. 41 at ¶¶ 8-9.)  Defendant Tancreto determined plaintiff had enemy concerns, but Tancreto "advised he did not know the inmate in cell 203."  (ECF No. 41 at ¶ 11.)  Plaintiff alleged that defendant Trancreto denied plaintiff's request to identify an enemy.  (ECF No. 41 at ¶ 12.)

Plaintiff was then placed in restraints and escorted to the program officer for housing review.  (ECF No. 41 at ¶ 13.)  A supervisor interview was conducted with correctional employees from both housing unit buildings two and three.  (ECF No. 41 at ¶ 14.)  Plaintiff alleges defendant Hanks denied plaintiff a private interview so he could identify enemy concerns in violation of prison policy.  (ECF No. 41 at ¶ 15.)  Upon arrival at Facility B program office, plaintiff was placed in a holding cage where defendant Tancreto questioned plaintiff as to the reasons plaintiff refused to accept his cellmate.  (ECF No. 41 at ¶ 16.)  Plaintiff claims he placed Tancreto "on notice" a second time that plaintiff was refusing to accept the SNY-inmate in cell 203 as his new cellmate because he had threatened plaintiff's safety in the past.  (ECF No. 41 at ¶¶ 17-18.)  Plaintiff alleges defendant Tancreto denied plaintiff's request to be classified as a

victim, and took administrative action alleging plaintiff disobeyed a direct order.  (ECF No. 41 at ¶¶ 19, 22.)  Plaintiff claims he requested that defendant Tancreto report this information to the program office administrators because plaintiff "could no longer reside safely on Facility Bravo." (ECF No. 41 at ¶ 20.)  Plaintiff repeated his safety concerns, and requested he be removed from cell 203 to administrative segregation unit ("ASU") so that the Warden could review the case. (ECF No. 41 at ¶ 21.)

Plaintiff alleges that on or about June 4, 2011, defendant Hanks interviewed plaintiff, while plaintiff was in the holding cage, as to the reasons plaintiff was refusing his cellmate, and plaintiff informed Hanks that he was incompatible with the cellmate in 203, that this inmate posed a threat to plaintiff's safety while housed on Facility Bravo, and plaintiff wanted to be placed in the ASU.  (ECF No. 41 at ¶¶ 23-25.)  Plaintiff alleges that defendant Hanks then determined the inmate in cell 203 posed no serious threat because plaintiff was unable to identify valid enemy concerns.  (ECF No. 41 at ¶ 26.)  Plaintiff claims Hanks denied plaintiff's right to be classified as a victim.  (ECF No. 41 at ¶ 27.)

Plaintiff next alleges that defendant Fackrell ordered plaintiff to be housed in cell 203. (ECF No. 41 at ¶¶ 28-29.)  Plaintiff claims he notified defendant Fackrell that plaintiff could not be physically forced into a cell with an incompatible inmate who had threatened to assault plaintiff in the past.  (ECF No. 41 at ¶ 29.)  Plaintiff contends that defendant Fackrell determined plaintiff did not have valid enemy concerns, and denied plaintiff's right to be protected from other SNY-inmates.  (ECF No. 41 at ¶¶ 30-31.)

At approximately 10:40 a.m. on or about June 4, 2011, plaintiff alleges that defendants Holt, Green and Tancreto "lead a two-on-one physical control hold."  (ECF No. 41 at ¶ 33.) Defendant Holt allegedly ordered that plaintiff be physically forced into cell 203, and used excessive force in doing so.  (ECF No. 41 at ¶ 34.)  Plaintiff claims he then recalled the name of the inmate in cell 203, Beltran, and told Holt about a prior incident where Beltran retaliated against plaintiff, requiring officers to pepper spray Beltran.  (ECF No. 41 at ¶ 35.)  Plaintiff claims defendant Holt denied plaintiff's request to classify enemies.  (ECF No. 41 at ¶ 37.)

////

During the use of force, plaintiff claims he was kicked in the heels, thrown to the ground, punched in the jaw and collarbone, and elbowed in the hip. (ECF No. 41 at ¶ 61.) Plaintiff alleges that defendants Holt and Green attempted to break his fingers. (Id.)

Plaintiff alleges that defendant Hanks conducted a use of force interview at sergeant's office where defendant Glover videotaped plaintiff's injuries, and plaintiff informed Glover of the injuries and the alleged use of excessive force. (ECF No. 41 at ¶¶ 39-40.) Plaintiff alleges that defendant Hanks determined Beltran and plaintiff were not enemies, and denied plaintiff's request to identify an enemy, a complete use of force interview, and the ability to gather additional information. (ECF No. 41 at ¶¶ 41-42.)

Next, plaintiff alleges that defendant Fackrell ordered defendants Giessner and Glover to "lead a two-on-one physical control hold in a second attempt without the use of restraints" to house plaintiff in cell 203. (ECF No. 41 at ¶ 44.) Plaintiff claims that defendant Fackrell authorized the use of force, and instructed Giessner and Glover to take plaintiff to the ground if there were any problems. (ECF No. 41 at ¶ 44.) Plaintiff alleges he put defendant Giessner on notice that Beltran had threatened plaintiff's safety in the past, and thus Giessner put plaintiff's life in danger by ordering plaintiff into cell 203. (ECF No. 41 at ¶ 48.) Plaintiff alleges that Giessner and Glover used "deadly" and "unnecessary" force by dropping him to the ground and pinning him down on his left side, injuring his temple, shoulder, and jaw. (ECF No. 41 at ¶ 65.) Plaintiff alleges that defendant Giessner determined plaintiff alleged safety concerns, but that Giessner did not provide appropriate instruction in case the inmate in 203 was inmate Beltran, and denied plaintiff's request to identify a classified enemy. (ECF No. 41 at ¶¶ 49-50.)

At approximately 12:38 p.m., plaintiff alleges that defendant Hanks responded to an alarm in the housing unit, and plaintiff informed him that Beltran attempted to assault plaintiff as the cell door opened. (ECF No. 41 at ¶ 51.) Plaintiff alleges defendant Hanks determined plaintiff had enemy concerns, but failed to complete a second use of force interview. (ECF No. 41 at ¶ 52.)

Plaintiff also alleges that defendants Hanks, Fackrell, Green, Tancreto, Holt, Giessner, and Glover intentionally inflicted emotional damage by their failure to enforce prison policies and to

1    properly investigate plaintiff's enemy concerns.   (ECF No. 41 at ¶ 76.)  Plaintiff alleges that

2    these defendants should have known their conduct would cause plaintiff to suffer emotional

3    distress, mental pain, anguish and suffering, and humiliation.  (Id.)

4        D.  Facts[5]

5        1.  Plaintiff is an inmate in the custody of the California Department of Corrections and

6    Rehabilitation ("CDCR").

7        2.  At times relevant to the lawsuit, plaintiff was incarcerated at HDSP.

8        3.  Plaintiff alleges he suffered two incidents of excessive force, and that defendants failed

9    to protect him when defendants knowingly forced him to cell with an enemy.  (ECF No. 41.)

10       4.  Plaintiff had thirty days from the date of the incident being appealed to submit a

11   grievance (also known as an appeal) to the appeals coordinator at HDSP.  Cal. Code Regs. tit. 15

12   § 3084.2(c), 3084.7, 3084.8(b).

13       5.  Appeals that are properly and timely submitted are assigned a log number for tracking

14   purposes and to prevent inmates from alleging staff lost or destroyed the appeal.  (ECF No. 63-5

15   at ¶ 6.)

16       6.  Under prison regulations, inmates are required to pursue their appeal through three

17   levels of review in order to exhaust the administrative appeals process.  (ECF No. 63-5 at ¶¶ 4-5;

18   63-4 at ¶¶ 6-7.)

19       7.  After January 1, 2011, plaintiff did not file an appeal at HDSP that was accepted for

20   review that raised allegations of excessive force, failure to protect, or the intentional infliction of

21   emotional distress at HDSP mentioning any of the defendants.  (ECF No. 63-5 at ¶¶ 7-8.)

22       8.  Plaintiff did not file an appeal at the third level of review that raised allegations of

23   excessive force, failure to protect, or the intentional infliction of emotional distress at HDSP

24   mentioning any of the defendants.  (ECF No. 63-4 at ¶¶ 8-10.)

25   ////

26   _____

[5]  For purposes of the instant motion for summary judgment, the court finds the following facts

27   undisputed.  Documents submitted as exhibits are considered to the extent that they are relevant, and
     despite the fact that they are not authenticated because such documents could be admissible at

28   trial if authenticated.

9.  Plaintiff is aware of the appeal process as he has previously filed and exhausted numerous inmate appeals.  (ECF No. 63-4 at 6-10; 63-5 at 3.)

10.  Plaintiff admits he did not complete the exhaustion process.  (ECF No. 41 at 2.)

11.  D. Clark is appeals coordinator for HDSP.  (ECF No. 63-5.)

E.  The Parties' Contentions

Defendants contend that plaintiff is required to exhaust his administrative remedies before filing suit in federal court, and that plaintiff failed to file an inmate appeal raising allegations mirroring those contained in the operative pleading here.  Defendants note that plaintiff admitted in his pleading that he failed to complete the grievance process.  (ECF No. 63-3 at 10.) Defendants provided the declarations of D. Clark, Appeals Coordinator at HDSP, and J. Zamora, Acting Chief of Inmate Appeals, confirming that no such third level appeal was filed.  (ECF Nos. 63-3 at 10; 63-4; 63-5.)  Defendants aver that since January 11, 2011, plaintiff only filed one appeal in compliance with the appeal regulations, which appeal concerned plaintiff's prison employment.  (ECF No. 63-3 at 10; 63-5 at 5-9.)  In addition, since 2010, plaintiff only filed one appeal at the third level of review, which was screened out.  (ECF No. 63-4 at 3.)

In opposition,[6] plaintiff appears to claim that he took reasonable efforts to substantially comply with exhaustion requirements.  (ECF No. 67 at 7.)  Plaintiff claims that on June 19, 2011, plaintiff filed a staff complaint against defendants Hanks and Fackrell, "and other parties involved."  (ECF No. 67 at 8.)  Plaintiff claims he timely submitted an original CDCR 602 inmate appeal[7] to CCII D. Clark, appeals coordinator supervisor, "and within eighteen days from the last time plaintiff assessed a grievance from his assign[ed] housing while living on Facility Bravo (SNY) Building Three, cell 131U."  (Id.)  Plaintiff alleges that on June 22, 2011, the 72 hours' notice expired for HDSP appeals coordinator to "conduct [a]n initial First Level Reviewer

---

[6]  Initially, plaintiff argues concerning the underlying merits of his claims against defendants, including events that took place at the subsequent rules violation hearing.  (ECF No. 67 at 4-8.) Such arguments are not relevant to the issue of exhaustion, and therefore are not addressed herein.

[7]  A 602 is a formal written appeal whereby prisoners can administratively appeal a "decision, action, condition, or policy which they can demonstrate as having an adverse effect on their welfare" made by any officer of the CDCR.  See Cal. Code Regs., tit. 15 § 3084.1(a).

11

1  screening process."  (ECF No. 67 at 8.)  Plaintiff did not appeal to the warden at HDSP "because
2  of an earlier staff interview through health care appeals coordinator to only file [an] original
3  appeal within fourteen working days."  (Id.)  Plaintiff claims he was instructed that he "cannot
4  duplicate any appeals unless properly authorized, approved."  (Id.)

5      Plaintiff claims that on July 1, 2011, he sent a written communication to Chief Deputy
6  Warden R.L. Gower and CCII D. Clark appeals coordinator supervisor at HDSP regarding his
7  original grievance dated June 19, 2011.  (ECF No. 67 at 9.)  On July 12, 2011, Gower prepared a
8  warden's office memorandum instructing plaintiff to notify HDSP inmate appeals by using the
9  CDCR inmate appeals process.  (Id.)  Plaintiff claims that on July 21, 2011, August 22, 2011, and
10  August 29, 2011, plaintiff sent written communications to CCII D. Clark requesting assistance.
11  On September 5, 2011, plaintiff sent a CDCR 22 inmate request for interview to Warden
12  McDonald, soliciting a head supervisor review concerning plaintiff's original grievance.  Plaintiff
13  contends he received no response.  (ECF No. 67 at 9.)

14      Plaintiff claims that on October 29, 2011, he wrote CDCR Director Matthew Cate
15  concerning noncompliance with the administrative remedies process.  (ECF No. 67 at 9.)
16  Plaintiff claims he reported that his original grievance was timely filed on June 19, 2011, and that
17  he suspected defendants Tancreto and Glover were obstructing the appeal process since they were
18  authorized to work inside the ASU.  (ECF No. 67 at 9-10.)

19      On December 21, 2011, Correctional Counselor Specialist D. Lee prepared a
20  memorandum with instructions for plaintiff -- an "inmate request for interview via Tehachapi
21  Appeals Coordinators."  (ECF No. 67 at 10.)  On January 12, 2012, plaintiff sent CCII K.
22  Sampson and D. Lillies an inmate request for interview to exhaust administrative remedies at
23  Tehachapi.  (Id.)  On January 25, 2012, plaintiff send Director Cate a second request for
24  interview.  (Id.)  On March 2, 2012, plaintiff wrote to Director Cate soliciting further assistance
25  "because of the non-compliance of policy for plaintiff's exhaustion of available administrative
26  remedies" at HDSP.  (ECF No. 67 at 10.)

27      On June 9, 2011, a CDC 128-G classification chrono was prepared by Correctional
28  Counselor Amrein, but plaintiff contends it did not contain the information plaintiff discussed

with the classification committee or complete a staff complaint.  (ECF No. 67 at 11.)  On June 11, 2011, a CDC 128-B informational chrono was prepared by Sgt. T. Hayes, but plaintiff contends it did not contain the information plaintiff discussed with the classification committee or complete a staff complaint.  (ECF No. 67 at 11.)

On July 1, 2011, plaintiff claims Lt. Crandall asked plaintiff to make a handwritten statement of the use of force in the second incident that involved defendants Giessner and Glover. (ECF No. 67 at 12.)  Plaintiff claims Lt. Crandall conducted a confidential interview, use of force, during which plaintiff reported having filed a CDCR 602 "appeal staff complaint" but had not received a "return disposition."  (Id.)  Plaintiff claims Lt. Crandall advised plaintiff that Crandall would notify the appeals coordinator.  (Id.)  Plaintiff alleges that during the subsequent ASU review he put Associate Warden Perez on notice that a CDCR 602 was submitted, but that plaintiff had not received a return disposition.  Associate Warden Perez advised plaintiff to submit a CDR22 inmate request for interview to resolve his appeal concerns.

On September 1, 2011, a CDC-128G classification chrono was prepared by CCI C. Amrein, but she allegedly failed to record any of the information plaintiff discussed during the classification hearing regarding the "allegation of shortcomings that occurred at HDSP ASU Z-unit cell 128."  (ECF No. 67 at 13.)  On September 15, 2011, plaintiff sent a CDCR 602 inmate appeal concerning "living conditions" to IAO regarding receiving assistance to obtain a 602 A-form attachment, attempt to complete multiple grievance processes while detained in ASU.  (Id.)

On February 9, 2012, Associate Warden Perez sent plaintiff a letter regarding plaintiff's allegations of excessive/inappropriate use of force.  (ECF No. 67 at 14, citing 67 at 64.)  Associate Warden Perez noted that he had reviewed plaintiff's correspondence regarding incident Log #FBO-11-06-0241 and incident log #FB2-11-06-0242, and that subsequent to plaintiff's allegations of excessive/inappropriate force during the incident, "a fact finder and video tape interview was conducted."  (ECF No. 67 at 64.)  The Warden noted that the HDSP Use of Force Committee reviewed the CDCR 7219, staff reports and the use of force interview, but concluded that staff did not violate CDCR policy and procedure and that the use of physical force was in compliance with departmental training and procedures.  (Id.)  Associate Warden Perez informed

13

1    plaintiff that if he was attempting to submit a staff complaint, he must following the guidelines in

2    Title 15, section 3084, and submit his CDCR 602 appeal, and noted that only one CDCR 602-A is

3    allowed for an appeal.  (ECF No. 67 at 64.)

4         In his declaration, plaintiff declares that on June 19, 2011, he filed a staff complaint

5    against both defendants Hanks and Fackrell alleging failure to protect, use of excessive force, and

6    the intentional infliction of emotional distress, and appends a copy of the CDCR 602 appeal.

7    (ECF No. 67 at 30, 38-43.)  Plaintiff states he placed the envelope in his cell door for collection

8    by D. York, not a named party herein, during third watch.  (ECF No. 67 at 30.)

9         In reply, defendants contend that plaintiff failed to adduce evidence in support of his

10   claims that "his attempts to exhaust his administrative remedies were somehow thwarted by

11   prison officials."  (ECF No. 68 at 1.)  Defendants note that the CDCR 602 appeal provided by

12   plaintiff and marked "duplicate appeal," lacks any receipt stamp or notation in the "staff use" box.

13   (ECF No. 68 at 1-2, <u>citing</u> ECF No. 67 at 38-43.)  Moreover, defendants contend the CDCR 602

14   appeal now provided by plaintiff is "suspiciously different" than the appeal submitted in

15   opposition to the previous motion to dismiss, now appearing, for the first time, on a CDCR 602.

16   (ECF No. 67 at 6, comparing ECF No. 67 at 38-43 with ECF No. 59-2 at 21-23 (also devoid of

17   receipt stamps or staff use notes).)

18        With regard to plaintiff's Exhibits P and X, defendants argue that letters to prison

19   administrators and other prison offices are insufficient to exhaust the administrative process,

20   citing Cal. Code Regs. tit. 15, § 3084.2(c) (noting place of filing inmate appeals as the appeals

21   coordinator).  (ECF No. 68 at 2.)  Moreover, Associate Warden Perez gave plaintiff appropriate

22   instructions on the proper form and place in which to file a formal appeal.  (ECF No. 68 at 2,

23   citing ECF No. 67 at 64.)

24        In connection with plaintiff's Exhibit W, an additional "duplicate appeal," concerning

25   plaintiff's alleged inability to receive "adequate indigent (A.S.U.) housing unit weekly supplys

26   [sic] and CDCR Form 602-A, blank white paper & law library request[s] between Aug 08, 2012,

27   and Sept. 15, 2012," defendants note there is no evidence that this appeal was properly filed at

28   HDSP.  (ECF No. 67 at 2-3.)

14

1        Ultimately, defendants argue that plaintiff adduced no evidence demonstrating an appeal

2   concerning the issues raised in the third amended complaint was properly filed with the HDSP

3   appeals office or through the third level of review.  (ECF No. 68 at 2.)

4        F.  Discussion

5        Plaintiff claims his Exhibit A, which is an inmate appeal, CDCR 602, with his

6   handwritten "(I/M Duplicate Appeal Original Pending)" written across the top is the grievance he

7   filed to exhaust his administrative remedies.  (ECF No. 67 at 38.)  Although plaintiff concedes he

8   did not exhaust his claim to the third level of review, he essentially alleges that he exhausted all

9   administrative remedies made available to him.  Plaintiff declares that on June 19, 2011, he

10  placed the CDCR 602 inside a u-save'em envelope addressed to CCII D. Clark, appeals

11  coordinator at HDSP Inmate Appeals Office, and placed the envelope in his cell door of cell 728.

12  (ECF No. 67 at 30.)  Plaintiff states that Officer D. York, not a party to this action, was

13  responsible for collecting inmates' mail on third watch at ASU Z-unit that day.  (Id.)  Plaintiff

14  declares that he suspects that defendant Glover, who was working at the ASU Z-unit, may have

15  obstructed the filing of plaintiff's appeal.  (Id.)

16       Plaintiff submitted numerous exhibits in support of his motion, many of which are not

17  relevant to the issue of exhaustion, or bear no relationship or relevance to the 2011 incident at

18  issue.  (For example, plaintiff's Exhibits K (2009 memo that pre-dates incident), L (re CDCR

19  128-G classification chrono), M (re CDCR 128-B informational chrono), N (health care issue), O

20  (re challenge to previous disciplinary); R (rules violation report ("RVR") challenge), S (health

21  care issue), T (re CDCR 128-G classification chrono); U (health care request form); V (mental

22  health progress note); and Y & Z (health care issues).  In addition, plaintiff cites to Exhibits B-G,

23  but no such exhibits were included in his briefing to the instant motion.

24       However, pursuant to plaintiff's request, the undersigned reviewed the exhibits plaintiff

25  provided with his prior opposition to the motion to dismiss.  (ECF No. 59-2 at 25-46.)  Because

26  plaintiff is proceeding without counsel, and in an abundance of caution, the undersigned also

27  ////

28  ////

15

reviewed exhibits appended to prior pleadings.[8]  (ECF Nos. 1 at 31-72; 9 at 27-40 (RVRs only), and 23 at 50-62.)  Rather than address the voluminous exhibits that are not relevant, the undersigned addresses only those relevant to the issue of exhaustion of administrative remedies.

### 1. Relevant Exhibits

Plaintiff's handwritten "duplicate appeal" on CDCR 602 appeal form, dated June 19, 2011, raises allegations consistent with those contained in the operative pleading here.  (ECF No. 67 at 38-43 (Pl.'s Ex. A).)  There is no log number, no received stamp from the appeals office, and no staff markings in the "staff use" boxes on this document.  (ECF No. 67 at 38-43.)

On July 1, 2011, plaintiff wrote a letter to Chief Deputy Warden Gower, HDSP, and D. Clark, CCII,[9] and the letter bears an HDSP Appeals stamp received date of July 11, 2011.  (ECF No. 1 at 51.)  The subject line states "Assignment notice on pending staff complaint appeal vs. Sgt. W. Hank[s] & Sgt. C. Fackrell Dated 06042011."  (Id.)  Plaintiff requested "assistance to receive [an] inmate appeal notice for [his] pending CDCR 602 & CDCR 602-A staff complaint sent to I.O.A. dated 06192011."  (Id.)  After recounting his receipt of two CDC-115s based on the events of June 4, 2011, plaintiff states that he "timely filed [his] CDCR 602 within (15) fifteen working days," which was sent through institutional mail with ASU staff at Z-unit during third watch.  (Id.)

In the July 1, 2011 letter, plaintiff also advises that he filed a separate appeal C128 on June 12, 2011.  "[A] HC-appeal assignment notice was re-routed following [June 20, 2011]," which was processed within nine days.  (Id.)  In addition, plaintiff mentions that he received an HDSP 695 form on his disciplinary appeal with Lt. K. Luther CCII instructing plaintiff "to refile a new 115 finalized dispo/appeal" and stated "additionally your appeal was reviewed by the hiring authority and determined not to be processed as a staff complaint signed/dated June 30, 2011.  "I may consider to withdraw[] my disciplinary action upon notice of the pending staff

---

[8]  On April 10, 2013, the court noted that plaintiff submitted various exhibits which the court would retain, and to which plaintiff could refer.  (ECF No. 39 at 9.)  Defendants received copies of plaintiff's exhibits appended to his opposition to the prior motion to dismiss.  (ECF No. 59.)

[9]  It is undisputed that D. Clark is appeals coordinator for HDSP.  (ECF No. 63-5.)

complaint as said mention in this letter," plaintiff added.  (ECF No. 1 at 52.)  "The inmate appeal office decision has not yet affected my pending staff complaint w[ith] Sgt. Hank[s] and Sgt. Fackrell."  (ECF No. 1 at 52.)  Plaintiff ends his letter with his request:  "Please contact appellant for his process appeal assignment notice."  (Id.)

While plaintiff's July 1, 2011 letter to Gower and Clark is not the model of clarity, it puts Clark on timely notice that plaintiff was inquiring as to the status of his CDCR 602 appeal sent on June 19, 2011 through institutional mail, and also sought an assignment notice for such appeal. (Id.)

On July 12, 2011, Chief Deputy Warden Gower sent plaintiff a memo regarding plaintiff's June 19, 2011 correspondence concerning allegations of staff misconduct during two separate incidents on June 4, 2011, resulting in the issuance of two separate serious rules violations. Plaintiff was encouraged to use the inmate appeal system.  (ECF No. 59-2 at 27 (Pl.'s Ex. C).) Warden Gower's memo does not mention plaintiff's July 1, 2014 letter.

On July 21, 2011, plaintiff wrote a letter to CCII D. Clark, Appeals Coordinator, asking the appeals coordinator's assistance to complete plaintiff's pending grievance CDCR 602-A staff complaint inmate appeal against Sgts. Hank[s] and Fackrell submitted on June 19, 2011.  (ECF No. 59-2 at 29 (Pl's Ex. D).)  On August 22, 2011, plaintiff again wrote Clark asking for assistance to receive an inmate appeal notice for his pending CDCR 602 assistance with his appeal submitted on June 19, 2011.  (ECF No. 59-2 at 30-31.)  On August 29, 2011, plaintiff again wrote D. Clark seeking an assignment notice on his June 19, 2011 CDCR 602 against Sgts. Hank[s] and Fackrell.  (ECF No. 59-2 at 32.)

On September 5, 2011 plaintiff signed a CDCR 22 Inmate Request form in which plaintiff referenced his staff complaint, a use of force follow up regarding HDSP FBO-11-06-0241, and claims he provided reviewers previous written notice "as instructed by Gower" regarding his CDCR 602 complaint dated June 19, 2011.  (ECF No. 59-2 at 35 (Pl.'s Ex. E).)  This form contains no prison staff notations or staff response.  (Id.)

On October 29, 2011, plaintiff wrote a letter to Matthew Cate, while plaintiff was housed at Tehachapi, concerning plaintiff's request to have a Head Director review possible obstruction

1   of plaintiff's due process to have his pending grievance exhausted.  ECF No. 59-2 at 37-39 (Ex.

2   F).)  Plaintiff states that he sent confidential letters to Gower and Clark on July 1, 2011, and asked

3   them to assign an appeal to his pending CDCR 602.  (Id.)  Plaintiff claimed that on July 11, 2011,

4   "this written directive was officially ratified by said . . . parties and [his] confidential action [was]

5   prestamped 'received July 11, 2011 HDSP Appeals.'"  (ECF No. 59-2 at 37.)

6        On November 27, 2011, plaintiff signed a "duplicate" copy of plaintiff's CDCR 602

7   inmate appeal submitted with inmate appeals office HDSP, which states:  "This is a staff

8   complaint pursuant to CCR, Section 3084.1 (a)(b)(3) & 3391.(a) Title 15."  (ECF No. 23 at 52-

9   54.)  This appeal is written on plain white paper, not on a CDCR 602 appeal form.  (ECF No. 23

10  at 54.)[10]

11       On December 21, 2011, plaintiff received a letter from Correctional Counselor Lee

12  informing plaintiff to submit a request for interview to the current institutional appeals

13  coordinator.  (ECF No. 59-2 at 41 (Pl.'s Ex. G).)

14       On January 1, 2012, plaintiff completed a CDCR 22 inmate request for interview in which

15  he specifically requests a personal interview "for the exhaustion of available state remedies on

16  [his] pending 602 appeal submitted 6/19/11 from HDSP ASU Z-unit against Sgt. W. Hank[s] and

17  Sgt. Fackrell."  (ECF No. 59-2 at 43 (Pl.'s Ex. H).[11]

18  _____

19  [10]  Defendants point out that plaintiff provided two different versions of the grievance at issue:
the first one is on plain white paper, all in plaintiff's handwriting; the second one is on a CDCR

20  602 form.  (Compare ECF No. 23 at 52-54 with ECF No. 67 at 38-43.)  However, the second
grievance is dated June 19, 2011, and the previously-submitted one bears a signature date of

21  November 27, 2011.  (ECF No. 23 at 54.)  The November 27, 2011 grievance adds a paragraph 5
containing allegations against H. Bueltman, a radiologist technician.  (ECF No. 23 at 54.)

22  Plaintiff does not explain the differences, but in his prior pleading, he describes the second appeal
as his "personal duplicate inmate staff complaint appeal date 6/9/11."  (ECF No. 23 at 4.)

23  Moreover, it is not uncommon for inmates housed in ASU to handwrite copies due to their

24  inability to access a photocopier.

25  [11]  Appended to plaintiff's original complaint is a similar document, dated January 1, 2012, but it
is not verbatim.  (ECF No. 1 at 68.)  Rather, it is a carbonized copy of a CDCR 22 Inmate

26  Request by plaintiff, in response to Art Hernandez, headquarters administrator, which was
addressed by Correctional Counselor Lee.  (ECF No. 1 at 68.)  "See also CDCR-11-4165."  (Id.)

27  Plaintiff asked someone to personally come see him regarding his pending CDCR 602 appeal
submitted June 19, 2011 against Sgt. Hanks and Sgt. Fackrell.  (ECF No. 1 at 68.)

28

1    On January 25, 2012, plaintiff submitted to the Tehachapi appeals office a CDCR 22

2    inmate request for interview regarding non-compliance with exhaustion of administrative

3    remedies for his appeal submitted on June 19, 2011, regarding the incidents on June 4, 2011.

4    (ECF No. 59-2 at 45 (Ex. I).)  Plaintiff notes on the form that he received a response on February

5    27, 2012, but plaintiff did not provide a legible copy of the response.  (Id.)  However, it appears

6    plaintiff disagreed with the response, and resubmitted the form on March 2, 2012, for supervisor

7    review, and appended a copy of his October 29, 2011 letter to Matthew Cate, with portions

8    crossed out and the new date of March 2, 2012, written in.  (ECF No. 59-2 at 46.)

9    2.  Analysis

10    Defendants have demonstrated that plaintiff failed to exhaust his administrative remedies

11    through the third level of review.  However, the Ninth Circuit has held that a prisoner may be

12    excused from complying with the exhaustion requirement when prison officials make

13    administrative remedies effectively unavailable.  See Albino, 697 F.3d at 1034.  The exception to

14    exhaustion requirement applies where there is evidence that officials engaged in misconduct, told

15    a prisoner that there are no available administrative remedies, or pointed him in a direction that

16    would cause him not to exhaust his administrative remedies.  See id.  The Ninth Circuit has also

17    cited with approval the Seventh Circuit's holding that exhaustion is excused when prison officials

18    fail to respond to a properly-filed grievance.  See id. n.7 (noting that the court's sister circuits also

19    excuse exhaustion when prison officials make administrative remedies effectively unavailable by

20    refusing to provide required grievance forms, failing to respond to properly-filed grievances, or

21    threatening retaliation for filing grievances) (citing Dole v. Chandler, 438 F.3d 804, 809 (7th Cir.

22    2006)).

23    While the absence of evidence that a grievance was officially filed may indicate plaintiff

24    did not submit the grievance, it may also indicate that the grievance was discarded or ignored by

25    staff, as plaintiff contends.  See Spence v. Director of Corr., 2007 WL 61006, *3 (E.D. Cal. Jan.

26    8, 2007) (If prison officials "are interfering with inmates' ability to properly file their 602s, then

27    there will be no official record of the 602s having been 'accepted.'"), findings and

28    recommendations adopted in full, 2007 WL 738528 (E.D. Cal. Mar. 6, 2007).)  Because the

19

1   parties offer differing versions of events based on competing declarations, the issue is one of

2   witness credibility, raising a material issue of fact.

3           Moreover, defendants failed to address or rebut plaintiff's evidence that he wrote to

4   appeals coordinator D. Clark numerous times concerning the June 19, 2011 CDCR 602 appeal.

5   While defendants correctly argue that letters to prison administrators and other prison offices are

6   insufficient to exhaust the administrative process, plaintiff provided copies of four separate letters

7   he wrote to D. Clark, appeals coordinator at HDSP.  The July 1, 2011 letter bears a July 11, 2011

8   received stamp from the HDSP appeals office.  (ECF No. 1 at 51.)  Defendants adduced no

9   evidence demonstrating that D. Clark or other appeals officials responded to plaintiff's requests,

10  or informed plaintiff that the June 19, 2011 CDCR 602 was never received, or that plaintiff

11  should re-submit the CDCR 602 for consideration, or that plaintiff must complete a CDCR 22

12  inmate request for interview.  Under these circumstances, because defendants failed to rebut

13  plaintiff's evidence concerning the steps he took in an effort to exhaust his administrative

14  remedies, in particular, plaintiff's July 1, 2011 letter bearing the July 11, 2011 received stamp,

15  defendants are not entitled to summary judgment.

16          For the above reasons, defendants' motion for summary judgment based on an alleged

17  failure to exhaust administrative remedies should be denied.

18  III.  Recommendations

19          Accordingly, IT IS HEREBY ORDERED that plaintiff's request for the court to consider

20  exhibits submitted with his prior opposition to the motion to dismiss (ECF No. 69) is granted; and

21          IT IS RECOMMENDED that defendants' motion for summary judgment (ECF No. 63) be

22  denied.

23          These findings and recommendations are submitted to the United States District Judge

24  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

25  after being served with these findings and recommendations, any party may file written

26  objections with the court and serve a copy on all parties.  Such a document should be captioned

27  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

28  objections shall be served and filed within fourteen days after service of the objections.  The

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  December 9, 2014

<u>KENDALL J. NEWMAN</u>
UNITED STATES MAGISTRATE JUDGE

/ware1505.msj.fte